# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARGARITO RIVAS-GONZALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-1186-JWL |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's evaluation of Dr. Murati's medical opinion, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceeding consistent with this opinion.

**I.     Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff seeks SSI benefits, alleging disability beginning February 4, 2009. (R. 18). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) committed numerous errors in denying his application for benefits, each related primarily to an alleged failure to find that Plaintiff has a residual functional capacity (RFC) limited to the sedentary level of exertion, is unable to communicate in English, and has no transferable skills, and therefore meets the requirements of Medical-Vocational Guidelines Rule 201.17.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

3

economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ failed to adequately explain his evaluation of Dr. Murati's opinion.

## II. Evaluation of Dr. Murati's Opinion

The ALJ discussed the report of the Independent Medical Evaluation of Plaintiff completed by Dr. Murati on January 22, 2003:

> Records show the claimant began treatment for his back injury in 2002. Treatment notes from Dr. Pedro A. Muraiti [sic] show the claimant underwent a MRI examination of his lumbar spine in 2002 which revealed degenerative disc with defused disc bulge at L4-L5 (Exhibit 7F [(R. 257-60)]). By the time of the independent medical evaluation with Dr. Muraiti [sic] in 2003, the claimant was found to have no worsening of his condition. Dr. Muraiti [sic] noted that the prior injury had been dealt with conservatively with physical therapy and steroid injections.

(R. 24-25).

At his independent medical evaluation, Dr. Murati also completed a "Release to Return to Work" which included permanent restriction on Plaintiff's work activities. (R.

4

260). The ALJ discussed Dr. Murati's release, and explained that he accorded the opinion contained therein "considerable weight:"

> The opinion of Dr. Pedro A. Murati is considered as to his opinion regarding the claimant's ability to return to work. Dr. Murati found that the claimant was able to sit, stand, walk, squat and climb stairs and ladders occasionally. Even though Dr. Murati found that the claimant would be unable to crawl, he did find that the claimant was capable of bending, crouching and stooping rarely. Regarding the claimants' [sic] strength, Dr. Murati found that the claimant was capable of frequently lifting, carrying, pushing or pulling 20 pounds and on occasion would be able to lift, carry, push or pull 35 pounds. Based on these findings, Dr. Murati opined that the claimant could return to work on a full time continuous basis (Exhibit 7F [(R. 257-60)]). As Dr. Murati's opinion is consistent with the residual functional capacity established herein, it is afforded considerable weight.

(R. 26-27). The ALJ's summary accurately reflects the limitations opined by Dr. Murati, except that Dr. Murati also stated that Plaintiff was restricted to "Alternate sit, stand, walk." (R. 260).

As is relevant to this discussion, the ALJ found the following limitations in assessing Plaintiff's RFC:

> he . . . can stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks; can sit for about 6 hours out of an 8 hour workday, with normal breaks; . . . except: the claimant is able to occasionally perform postural maneuvers such as stooping, crouching, climbing ramps and stairs. The claimant should avoid crawling and climbing ladders, ropes and scaffolding.

(R. 23).

Plaintiff argues that the RFC assessed by the ALJ is materially different than the limitations assessed by Dr. Murati in sitting, standing, and walking; in alternating sitting, standing, and walking; and in stooping and crouching. He reasons that because the ALJ

5

stated that he accorded "considerable weight" to the opinion of Dr. Murati, it was error to assess an RFC with such material differences from Dr. Murati's opinion without explaining why the opinion was not adopted in those respects. (Pl. Br. 18-20). The court agrees.

First, as Plaintiff argues, the RFC assessed by the ALJ is materially different than the limitations opined by Dr. Murati in each of the respects noted above. Dr. Murati's report stated that Plaintiff might perform the activities identified "based on an 8 hour work day," and defined "occasional" as "1-33%" and "frequent" as "1-66%." (R. 260). When Dr. Murati opined that Plaintiff could frequently lift/carry and push/pull 20 pounds, he was stating that Plaintiff could perform work in which he was required to lift/carry 20 pounds two-thirds of the time <u>or less</u>, and in which he was required to push/pull 20 pounds two-thirds of the time <u>or less</u>. When he opined that Plaintiff could occasionally sit, stand, and walk, he was stating that Plaintiff could do each activity one-third of the time <u>or less</u>. Thus, Dr. Murati was implicitly opining that Plaintiff could perform work for an 8-hour workday only in a job in which he could sit, stand, and walk one-third of the day <u>each</u>. The ALJ opined that Plaintiff is able to stand and/or walk "about six hours out of an 8 hour workday," and could sit "about six hours out of an 8 hour workday." Because six hours is more than either one-third or two-thirds of an 8 hour workday, both the ALJ's "stand and/or walk" limitation and his "sit" limitation are different than the limitations opined by Dr. Murati. When one recognizes that Dr. Murati's limitations are undoubtedly approximations, and that the limitations assessed by the ALJ relate to "about

6

six hours," the ALJ's "stand and/or walk" limitation is consistent with Dr. Murati's "stand" and "walk" limitations combined, at least to the extent that the ALJ's limitations allows standing and walking approximately equally. However, the ALJ's "sit" limitation exceeds Dr. Murati's "sit" limitation by about a factor of two. This difference is material because the ALJ informed the vocational expert that his hypothetical questions addressed an individual who could perform light work "as that term is defined in the regulations" (R. 59, 61), and the regulations define light work as work which "requires a good deal of walking or standing, or when it involves <u>sitting most of the time</u> with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b) (emphasis added). Therefore, of necessity, when the vocational expert opined regarding the availability of work, he was assuming a hypothetical individual who could sit <u>most of the time</u>, and the ALJ did not instruct him that Plaintiff had any different limitations.

Next, Dr. Murati opined that Plaintiff must alternate sitting, standing, and walking, but the ALJ's RFC assessment did not provide for any alternation of sitting, standing, or walking. This difference in limitations is also material for at least two reasons. SSR 83-12 recognizes that certain individuals "must alternate periods of sitting or standing." 1983-1991 Soc. Sec. Rep. Serv. 36 (West 1992), 1983 WL 31253 at *4. It notes that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitations of ability to sit or stand a VS [(vocational source--such as a vocational expert)] should be consulted to clarify the implications for the occupational base." <u>Id.</u> at 36, 1983 WL 31253 at *4. Here, a vocational expert was

six hours," the ALJ's "stand and/or walk" limitation is consistent with Dr. Murati's "stand" and "walk" limitations combined, at least to the extent that the ALJ's limitations allows standing and walking approximately equally. However, the ALJ's "sit" limitation exceeds Dr. Murati's "sit" limitation by about a factor of two. This difference is material because the ALJ informed the vocational expert that his hypothetical questions addressed an individual who could perform light work "as that term is defined in the regulations" (R. 59, 61), and the regulations define light work as work which "requires a good deal of walking or standing, or when it involves <u>sitting most of the time</u> with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b) (emphasis added). Therefore, of necessity, when the vocational expert opined regarding the availability of work, he was assuming a hypothetical individual who could sit <u>most of the time</u>, and the ALJ did not instruct him that Plaintiff had any different limitations.

Next, Dr. Murati opined that Plaintiff must alternate sitting, standing, and walking, but the ALJ's RFC assessment did not provide for any alternation of sitting, standing, or walking. This difference in limitations is also material for at least two reasons. SSR 83-12 recognizes that certain individuals "must alternate periods of sitting or standing." 1983-1991 Soc. Sec. Rep. Serv. 36 (West 1992), 1983 WL 31253 at *4. It notes that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitations of ability to sit or stand a VS [(vocational source--such as a vocational expert)] should be consulted to clarify the implications for the occupational base." <u>Id.</u> at 36, 1983 WL 31253 at *4. Here, a vocational expert was

consulted, but the ALJ gave no indication that the hypothetical individual in question needed to alternate sitting, standing, and walking. Morever, Dr. Murati was of the opinion that Plaintiff must sit, stand, and walk each for approximately one-third of a day. However, SSR 83-10 explains that "[m]any unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk." Id. at 24, 1983 WL 31251 at *6. Therefore, the fact (as opined by Dr. Murati) that Plaintiff must alternate standing and walking (and sitting) approximately equally throughout a workday may have a significant effect on the occupational base for light work. But, the vocational expert was given no information which would indicate that the standard requirements of light work might not be met in this case.

Finally, the ALJ found that Plaintiff could stoop occasionally whereas Dr. Murati opined that he could stoop only rarely. Again, SSR 83-10 defines "occasionally" as "occurring from very little up to one-third of the time." Id. at 24, 1983 WL 31251 at *5. Thus, Dr. Murati opined that Plaintiff could stoop only rarely whereas the vocational expert was instructed that the hypothetical individual was able to stoop up to one-third of the time. While it is possible that light work exists for someone who can stoop only rarely (very little?), there is no doubt that some eroding of the light occupational base occurs for such an individual. Because the vocational expert was not given a hypothetical suggesting only rare stooping, his responses included the entire light occupational base, including jobs that require more than rare stooping (up to one-third of the time).

The court is aware that the ALJ did not adopt Dr. Murati's opinion, but gave it "considerable weight." Moreover, the court does not intend to imply that on remand the Commissioner must adopt all of Dr. Murati's opinions. However, as Plaintiff suggests, SSR 96-8p requires that when an ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, West's Soc. Sec. Rep. Serv., 150 (Supp. 2013), 1996 WL 374184, *7. Here, Plaintiff has pointed to three material conflicts between Dr. Murati's opinion and the ALJ's RFC assessment. Either the ALJ did not recognize the conflicts or chose to ignore them. In either case, remand is necessary for the Commissioner to properly evaluate and weigh Dr. Murati's opinion, and if she does not adopt that opinion, to explain why.

Since remand is necessary due to the error in evaluating Dr. Murati's opinion, the court does not reach the numerous other allegations of error in the decision at issue. Plaintiff may make her arguments in that regard to the Commissioner on remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceeding consistent herewith.

Dated this 7th day of October 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**